WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—November, 1885.

## SUTTON v. PUBLIC ADMINISTRATOR.

*In the matter of the application for letters of administration upon the estate of* JAMES WILD, *deceased.*

A non-resident alien, not being entitled under our statute (2 R. S., 75 § 32), to a grant, by a Surrogate's court of this State, of letters of administration upon an intestate's estate, cannot, by a power of attorney, authorize another to procure what he is himself debarred from receiving.

The provisions of R. S., part 2, ch. 6, tit. 6, art. 2, entitled: "Of public administrators in the several counties of this State, other than the county of New York," were not repealed or otherwise affected by L. 1842, ch. 155, entitled: "An act in relation to coroners," and partly embodied in Code Crim. Pro., §§ 785-787.

Accordingly, where a man dies, from whatever cause, in this State, elsewhere than in New York or King's county, leaving assets amounting to $100 or more, in the county where the death occurs, and there is "no widow or relative in the county, entitled or competent to take letters of administration on the estate," the county treasurer should proceed, as public administrator, to procure letters of administration, under the article of the Revised Statutes, above cited.

THE intestate was employed in the construction of the new Croton aqueduct, within the limits of Westchester county, and while so employed received an injury from which he soon died. A coroner's inquest was held over the remains, and the coroner found among the effects of the deceased a watch and some other personal property, among which was a bank pass book, showing a deposit to the credit of the intestate in the Tarrytown National Bank, amounting to upwards of $400. The assets so found were delivered by him to the treasurer of the county.

It appeared, from a communication received by the coroner, that the only next of kin of intestate was Honora Wild, his mother, residing in the county of York, England. She transmitted to him a power of attorney, the execution of which was proved before a commissioner to administer oaths in the Supreme court of judicature in England, in and by which she empowered him to obtain letters of administration on the estate of the intestate, and generally to do whatever might be necessary to be done, to get in and administer said personal estate, as she might do if personally present. The coroner, George H. Sutton, applied for letters of administration accordingly.

THE SURROGATE.—The mother of the intestate, being a non-resident alien, cannot, under our statutes, obtain letters of administration herself, and she cannot authorize any one to do for her what she is precluded from doing. Were there none other, this would be a sufficient reason for declining to entertain the application.

The coroner, pursuant to the provisions of L. 1842, ch. 155, § 1 (Code Crim. Pro., § 785), delivered the valuable property and things on and belonging to the deceased to the county treasurer of Westchester county, who holds them under § 2 of that act (Code Crim. Pro., § 786), which provides that he shall, as soon as may be practicable, convert them into money and place the same to the credit of the county; and if demanded within six years thereafter by the legal representatives of the person on whom the same were found, he shall, after deducting the expenses incurred

by the coroner, etc., pay the balance thereof to such legal representatives (id., § 787). Now, it is alleged that the deceased was an unmarried man, and left no next of kin or relatives in this country. Hence, the county treasurer, as public administrator, by virtue of the provisions of 2 R. S., 129, § 47, was authorized to take possession of the property, and proceed in reference thereto, as authorized and directed to do by the article of which that section is a part. That section provides that, where a person shall have died intestate, leaving assets in the county, amounting to over one hundred dollars in value, upon which no letters of administration have been granted, and there is no widow or relative within the county, entitled or competent to take such letters, the public administrator shall take charge thereof and proceed as provided in said article.

All the conditions, therefore, exist which are requisite to invest the public administrator with power to act under the provisions of the R. S. Whether death resulted from apoplexy, heart disease, or the falling of a rock, can make no difference. In either case he died. The act of 1842 does not purport to be, in any of its provisions, amendatory of the R. S., nor to repeal any of them; and as repeal by implication is not favored, those statutes must be regarded as unaffected by the later act. It will be seen that, by the latter, there is no amount of assets or value of property on which the provision is limited, while by the former, the action of the public administrator is confined to those cases where such value shall exceed one hundred dollars. The object of the

act of 1842 may have been to cover those cases where the value was less than $100, and which were theretofore unprovided for, although such object is not expressed.

Under the latter act, if the money realized be not called for by the legal representative within six years, it will remain in the county treasury and belong to the county, while, if taken possession of by the public administrator and administered by him, the balance remaining after such administration is to be delivered to the State treasurer, from whom it may be obtained by any one entitled thereto, through an order of the Supreme court to that effect.

It seems to me that, in this case, the county treasurer should proceed as public administrator, and thus the mother will, with least trouble, expense, and delay, be enabled to obtain what of right belongs to her.